MERCHANTS' NATIONAL BANK OF TOLEDO *v.* BARRETT.

GARNISHMENT—ASSIGNMENT—INDEBTEDNESS.

> P., the owner of a lumber contract worth $1,000 and upwards, assigned the same, for a consideration of $10, to B., who took it subject to the claim of M. After being served with garnishee process, B. assigned the contract to M., who repaid the $10, and credited the amount realized from the lumber upon his claim against P. *Held,* that B. was improperly held liable as garnishee of P.

Error to Kent; Grove, J. Submitted January 9, 1900. Decided January 23, 1900.

Garnishment proceedings by the Merchants' National Bank of Toledo, Ohio, against William E. Barrett, as garnishee of James A. Panting. From a judgment for plaintiff, defendant brings error. Reversed.

This case was tried before the court without a jury, and the following findings made:

"1. December 16, 1895, Dennis Bros., of Grand Rapids, Mich., who were then the owners of a certain quantity of lumber situated at Manton, Mich., sold said lumber to the J. S. Eck Company, of Toledo, Ohio, for $4,315.79. The J. S. Eck Company paid down on the purchase price $2,000. James A. Panting, principal defendant, afterwards purchased the interest of the J. S. Eck Company in the lumber. February 18, 1896, Dennis Bros. made a written contract with defendant Panting, by the terms of which C. S. Bacon & Co., of Grand Rapids, were to sell said lumber on a commission of 50 cents per thousand, and out of the proceeds to pay the remainder of the purchase price due Dennis Bros., and the balance to defendant Panting. March 3, 1896, said contract between Dennis Bros. and defendant Panting was assigned in writing, indorsed thereon by defendant Panting, to garnishee defendant, William E. Barrett; and at the time the affidavit for the writ of garnishment against said garnishee defendant,

William E. Barrett, was made, and said writ of garnishment was issued and served, namely, the 25th day of March, 1896, said garnishee defendant held said contract by virtue of said assignment.

"2. At the time said assignment was made to said garnishee defendant, said principal defendant applied to said garnishee defendant for a loan of $10, and offered said contract as security. Said garnishee defendant paid said principal defendant $10 at that time, and took said assignment.

"3. At the time said assignment was made, said contract was worth the sum of $1,088.64, after the payment of the balance due on the purchase price.

"4. At the time said assignment was made, said principal defendant was indebted to the plaintiff in the sum of $942.27 on three promissory notes made by said principal defendant, by the name of James A. Panting & Co., payable to the order of the J. S. Eck Company. Said principal defendant was also indebted to the Mathias Planing-Mill Company, of Dayton, Ohio, to the amount of $2,100 or over.

"5. Subsequent to the 25th day of March, 1896, while the said contract was in the possession of the said garnishee defendant, Barrett, the principal defendant agreed with the Mathias Planing-Mill Company to assign said contract to it, to apply on his indebtedness to said company, with the understanding that, if the money realized from the sale of said lumber was more than sufficient to pay such indebtedness, the surplus should be paid to said principal defendant; and on the 15th of May, 1896, said garnishee defendant assigned said contract to the Mathias Planing-Mill Company, and received therefor $20,—being the $10 which he had loaned to said principal defendant, and $10 which he had expended for attorney's fees on account of this suit.

"6. The Mathias Planing-Mill Company realized from the sale of said lumber, after paying the balance of the purchase price due Dennis Bros., and all expenses of the sale and handling, the sum of $1,088.64, which the said Mathias Planing-Mill Company credited to the said Panting upon its claim against him of $2,100 and over, in pursuance of its agreement between it and the said Panting.

"7. James A. Panting did business under the name of James A. Panting & Co. He had no partner. The firm of William E. Barrett & Co. consisted of William E. Barrett alone.

"8. Said garnishee defendant was not a *bona fide* purchaser of said contract for value, but, at the time said writ of garnishment was sued out and served, held said contract as security for a loan of $10, which was subject to payment, and which has since been paid; and he is therefore liable to the plaintiff, as garnishee defendant, for the value of said contract, namely, the sum of $1,088.64."

Exceptions are taken to the finding of facts. If the finding of facts is erroneous, the finding of law must fall.

*Dunham & Dunham* ( *George P. Wanty*, of counsel), for appellant.

*Hatch & Wilson*, for appellee.

GRANT, J. ( *after stating the facts* ). The theory of the plaintiff is that defendant Barrett had property, moneys, goods, chattels, credits, or effects in his hands or under his control belonging to the principal defendant, Panting. It is also the theory that the assignment by Panting to Barrett was merely as a mortgage security. If it be conceded that this was a mortgage arrangement, and that Barrett might be held for whatever property should come into his hands under the assignment, still Barrett would not be liable, provided his security was made subject to the claims of the Mathias Planing-Mill Company. The mortgagee or other security holder cannot be held liable as garnishee until he has foreclosed his security, and received either the property or money in excess of the money loaned. Whether Barrett could be held liable as garnishee if he held the contract as security merely, we need not discuss; for we are clearly of the opinion that Mr. Barrett was a *bona fide* purchaser of this contract, subject to the claims of the Mathias Planing-Mill Company and Dennis Bros. It is undisputed that these two claims amounted to more than the value of the property, or what was realized from the sale thereof under the contracts. Mr. Barrett made disclosure that he had no property in his hands belonging to Mr. Panting, and that he was not indebted to him. Subsequently Mr. Barrett

was made a witness for the plaintiff. Mr. Barrett testified positively that he. paid Panting the $10 in absolute purchase of the contract, subject to these claims. In this he is corroborated by the only other witness who was present when the arrangement was made. The assignment was made in March, and Panting was preparing to go to Panama or South America, and went shortly after the assignment, and before service of the garnishee process. He knew that there could not be much, if anything, left in the contract after these two claims were paid. He offered to sell the residue for $10, and Barrett purchased. Whether or not there was an absolute, written assignment to the Mathias Planing-Mill Company prior to the assignment to Barrett, is immaterial. If Panting informed Barrett that his assignment was subject to that claim, and he purchased with that understanding, Barrett was justified in taking it subject thereto, and it would not affect the validity of his purchase. He had a right to agree that the debt of the Mathias Planing-Mill Company should be paid before he was entitled to anything under his assignment. It is true that the assignment from Barrett to the Planing-Mill Company is dated subsequent to the assignment by Panting to Barrett, and subsequent to the service of the garnishee process. But, if this was done by virtue of a prior agreement,—and we think the evidence clearly shows that it was,—it is valid. If defendant Barrett is not a *bona fide* purchaser, he is guilty of perjury. We do not think there is any substantial testimony in the case to contradict him.

Judgment reversed, and entered in this court for defendant Barrett.

The other Justices concurred.